**SHEEHAN & ASSOCIATES, P.C.**
Spencer Sheehan
505 Northern Blvd., Suite 311
Great Neck, NY 11021
Telephone: (516) 303-0552
Facsimile: (516) 234-7800
*spencer@spencersheehan.com*

United States District Court
Southern District of New York                                    1:19-cv-11928

| | |
|---|---|
| Wendy Lamouth, individually and on behalf of all others similarly situated, | |
| Plaintiff, | |
| - against - | Class Action Complaint |
| Horizon Organic Dairy, LLC, | |
| Defendant | |

Plaintiff by attorneys alleges upon information and belief, except for allegations pertaining to plaintiff, which are based on personal knowledge:

1.    Horizon Organic Dairy, LLC ("defendant") manufactures, distributes, markets, labels and sells single serving cartons of milk purporting to be flavored exclusively by vanilla under their Horizon Organic brand ("Products").

2.    The Products are available to consumers from retail and online stores of third-parties and are sold in sizes of 8 OZ (236 mL).

3.    The Product's relevant front label representations include "Krispy Kreme Doughnuts," "Glazed Apple Pie," "Original Glazed Flavoring," "Made with Real Fruit Filling and Other Natural Flavors," pictures of what appear to be whole and cut Granny Smith apples and the pie filling visible in the two halves of the pie.

1



4.     The back panel includes the Nutrition Facts and ingredient list.

I.     Vanilla is Constantly Subject to Efforts at Imitation Due to High Demand

5.     The tropical orchid of the genus Vanilla (*V. planifolia*) is the source of the prized

flavor commonly known as vanilla, defined by law as "the total sapid and odorous principles

extractable from one-unit weight of vanilla beans."[1]

6.     Vanilla's "desirable flavor attributes…make it one of the most common ingredients used in the global marketplace, whether as a primary flavor, as a component of another flavor, or for its desirable aroma qualities."[2]

7.     Though the Pure Food and Drugs Act of 1906 ("Pure Food Act") was enacted to "protect consumer health and prevent commercial fraud," this was but one episode in the perpetual struggle against those who have sought profit through sale of imitation and lower quality commodities, dressed up as the genuine articles.[3]

8.     It was evident that protecting consumers from fraudulent vanilla would be challenging, as E. M. Chace, Assistant Chief of the Foods Division of the U.S. Department of Agriculture's Bureau of Chemistry, noted "There is at least three times as much vanilla consumed [in the United States] as all other flavors together."[4]

9.     This demand could not be met by the natural sources of vanilla, leading manufacturers to devise clever, deceptive and dangerous methods to imitate vanilla's flavor and appearance.

10.     Today, headlines tell a story of a resurgent global threat of "food fraud" – from olive oil made from cottonseeds to the horsemeat scandal in the European Union.[5]

---

[1] 21 C.F.R. §169.3(c).

[2] Daphna Havkin-Frenkel, F.C. Bellanger, Eds., Handbook of Vanilla Science and Technology, Wiley, 2018.

[3] Berenstein, 412; some of the earliest recorded examples of food fraud include unscrupulous Roman merchants who sweetened wine with lead.

[4] E. M. Chace, "The Manufacture of Flavoring Extracts," Yearbook of the United States Department of Agriculture 1908 (Washington, DC: Government Printing Office, 1909) pp.333–42, 333 quoted in Nadia Berenstein,  "Making a global sensation: Vanilla flavor, synthetic chemistry, and the meanings of purity," History of Science 54.4 (2016): 399-424 at 399.

[5] Jenny Eagle, 'Today's complex, fragmented, global food supply chains have led to an increase in food fraud', FoodNavigator.com, Feb. 20, 2019; M. Dourado et al., Do we really know what's in our plate?. Annals of Medicine, 51(sup1), 179-179 (May 2019); Aline Wisniewski et al., "How to tackle food fraud in official food control authorities in Germany." Journal of Consumer Protection and Food Safety: 1-10. June 11, 2019.

11.    Though "food fraud" has no agreed-upon definition, its typologies encompass an ever-expanding, often overlapping range of techniques with one common goal: giving consumers less than what they bargained for.

A.   Food Fraud as Applied to Vanilla

12.    Vanilla is considered a "high-risk [for food fraud] product because of the multiple market impact factors such as natural disasters in the source regions, unstable production, wide variability of quality and value of vanilla flavorings," second only to saffron in price.[6]

13.    The efforts at imitating vanilla offers a lens to the types of food fraud regularly employed across the spectrum of valuable commodities in today's interconnected world.[7]

| Type of Food Fraud | Application to Vanilla |
|---|---|
| ➢ Addition of markers specifically tested for instead of natural component of vanilla beans | • Manipulation of the carbon isotope ratios to produce synthetic vanillin with similar carbon isotope composition to natural vanilla |
| ➢ Appearance of *more* and/or higher quality of the valued ingredient | • Ground vanilla beans and/or seeds to provide visual appeal as "specks" so consumer thinks the product contains real vanilla beans, when the ground beans have been exhausted of flavor <br> • Caramel to darken the color of an imitation vanilla so it more closely resembles the hue of real vanilla[8] <br> • Annatto and turmeric extracts in dairy products purporting to be flavored with vanilla, which causes the color to better |

---

[6] Société Générale de Surveillance SA, ("SGS "), Authenticity Testing of Vanilla Flavors – Alignment Between Source Material, Claims and Regulation, May 2019.

[7] Kathleen Wybourn, DNV GL, Understanding Food Fraud and Mitigation Strategies, PowerPoint Presentation, Mar. 16, 2016.

[8] Renée Johnson, "Food fraud and economically motivated adulteration of food and food ingredients." Congressional Research Service R43358, January 10, 2014.

|  | resemble the hue of rich, yellow butter |
| --- | --- |
| ➢ Substitution and replacement of a high quality ingredient with alternate ingredient of lower quality | • Tonka beans, though similar in appearance to vanilla beans, are banned from entry to the United States due to fraudulent use<br>• Coumarin, a toxic phytochemical found in Tonka beans, added to imitation vanillas to increase vanilla flavor perception |
| ➢ Addition of less expensive substitute ingredient to mimic flavor of more valuable component | • Synthetically produced ethyl vanillin, derived from recycled paper, tree bark or coal tar, to imitate taste of real vanilla |
| ➢ Compounding, Diluting, Extending | • "to mix flavor materials together at a special ratio in which they [sic] compliment each other to give the desirable aroma and taste"[9]<br>• Combination with flavoring substances such as propenyl guaethol ("Vanitrope"), a "flavoring agent [, also] unconnected to vanilla beans or vanillin, but unmistakably producing the sensation of vanilla"[10]<br>• "Spiking" or "fortification" of vanilla through addition of natural and artificial flavors including vanillin, which simulates vanilla taste but obtained from tree bark |
| ➢ Addition of fillers to give the impression there is more of the product than there actually is | • Injection of vanilla beans with mercury, a poisonous substance, to raise the weight of vanilla beans, alleged in *International Flavors and Fragrances (IFF), Inc. v. Day Pitney LLP and Robert G. Rose,* 2005, Docket Number L-4486-09, Superior Court of New Jersey, Middlesex |

---

[9] Chee-Teck Tan, "Physical Chemistry in Flavor Products Preparation: An Overview" in Flavor Technology, ACS Symposium Series, Vol. 610 1995. 1-17.
[10] Berenstein, 423.

County.

- Subtle, yet deliberate misidentification and obfuscation of a product's components and qualities as they appear on the ingredient list
  - "ground vanilla beans" gives impression it describes unexhausted vanilla beans when actually it is devoid of flavor and used for aesthetics

➢ Ingredient List Deception[11]
  - "natural vanilla flavorings" – "-ing" as suffix referring to something *like* that which is described
  - "Vanilla With Other Natural Flavors" – implying – wrongly – such a product has a sufficient amount of vanilla to characterize the food; often containing high amount of vanillin, which must be disclosed as an *artificial* flavor when paired with vanilla

B. <u>The Use of Vanillin to Simulate Vanilla</u>

14.    The most persistent challenger to the authenticity of real vanilla has been synthetic versions of its main flavor component, vanillin.

15.    First synthesized from non-vanilla sources by German chemists in the mid-1800s, vanillin was the equivalent of steroids for vanilla flavor.

16.    According to Skip Rosskam, a professor of vanilla at Penn State University and former head of the David Michael flavor house in Philadelphia, "one ounce of vanillin is equal to a full gallon of single-fold vanilla extract."[12]

17.    Today, only 1-2% of vanillin in commercial use is vanillin obtained from the vanilla

---

[11] Recent example of this would be "evaporated cane juice" as a more healthful sounding term to consumers to identify sugar.
[12] Katy Severson, <u>Imitation vs. Real Vanilla: Scientists Explain How Baking Affects Flavor</u>, Huffington Post, May 21, 2019.

plant, which means that almost all vanillin has no connection to the vanilla bean.

18.    Nevertheless, disclosure of this powerful ingredient has always been required where a product purports to be flavored with vanilla. *See* Kansas State Board of Health, Bulletin, Vol. 7, 1911, p. 168 (cautioning consumers that flavor combinations such as "vanilla and vanillin…vanilla flavor compound," etc., are not "vanilla [extract] no matter what claims, explanations or formulas are given on the label.").

19.    Since vanilla is the only flavor with its own standard of identity, its labeling is controlled not by the general flavor regulations but by the standards for vanilla ingredients.

20.    This means that if a product is represented as being characterized by vanilla yet also contains non-vanilla vanillin, the label and packaging must declare the presence of vanillin and identify it as an artificial flavor. *See* Vanilla-vanillin extract at 21 C.F.R. § 169.180(b) ("The specified name of the food is "Vanilla-vanillin extract _-fold" or "_-fold vanilla-vanillin extract", followed immediately by the statement "contains vanillin, an artificial flavor (or flavoring)".); *see also* 21 C.F.R. § 169.181(b), § 169.182(b) (similar declarations required for Vanilla-vanillin flavoring and Vanilla-vanillin powder).

21.    This prevents consumers from being misled by products which may taste similar to real vanilla and but for consumer protection requirements, would be sold at the price of real vanilla.

C.    "Natural Vanillins" are Produced in a Non-Natural Manner

22.    The past ten years have seen the introduction of vanillin ingredients that purport to be a "natural flavor," based on the raw material being a natural source and undergoing a natural production process.

23.    While vanillin can be made in an allegedly "natural" fermentation process from ferulic acid, the cost is prohibitive for use in most applications.

24.     When eugenol, from cloves are used to produce vanillin, it is subject to chemical reactions and processes considered to be synthetic by the FDA.

25.     These low-cost "natural vanillins" are produced by the ton in China, with little transparency or verification, before being delivered to the flavor companies for blending.

D.   Vanilla "WONF" to Imitate Real Vanilla

26.     The global shortage of vanilla beans has forced the flavor industry to "innovate[ing] natural vanilla solutions…to protect our existing customers."[13]

27.     The "flavor industry" generally refers to the largest "flavor houses" such as Symrise AG, Firmenich, Givaudan, International Flavors and Fragrances, Frutarom and Takasago International along with the largest food manufacturing companies such as Unilever.

28.     Their "customers" do not include the impoverished vanilla farmers who are at the mercy of these global conglomerates nor consumers, who are sold products labeled as "vanilla" for the same or higher prices than when those products contained *only* vanilla.

29.     On the surface, the flavor industry has developed schemes such as "Sustainable Vanilla Initiative" and "Rainforest Alliance Certified," its actual interests are opposed to price stability in the vanilla markets.

30.     These companies benefit from high vanilla prices and use of less real vanilla because it necessitates greater use of higher margin, proprietary, "vanilla-like" flavorings made with advanced technology and synthetic biology.

31.     In fact, high profile programs such as the "Sustainable Vanilla Initiative" and "Rainforest Alliance Certified" have been silently questioned among the vanilla farmers of Madagascar.

---

[13] Amanda Del Buono, Ingredient Spotlight, Beverage Industry, Oct. 3, 2016.

32.     Reports have circulated that contrary to promoting "sustainability" of vanilla, these programs push the needle in the opposite direction through cash payments to farmers to destroy their vanilla crops.

33.     Under the guise of promoting crop diversification, vanilla farmers are being urged to produce the ubiquitous palm oil instead of vanilla.

34.     Other tactics alleged to be utilized by companies such as Syrmise and Givaudan include "phantom bidding," where saboteurs claim they will pay a higher price to small producers, only to leave the farmers in the lurch, forced to sell at bottom dollar to any remaining bidders.[14]

35.     These conclusions, while not admitted, are consistent with the comments of industry executives.

36.     According to Suzanne Johnson, vice president or research at a North Carolina laboratory, "Many companies are trying to switch to natural vanilla with other natural flavors [WONF] in order to keep a high-quality taste at a lower price," known as "Vanilla WONF."

37.     The head of "taste solutions" at Irish conglomerate Kerry, urged flavor manufacturers must "[G]et creative" and "build a compounded vanilla flavor with other natural flavors."

38.     These compounded flavors typically exist in a "black box" and "consist of as many as 100 or more flavor ingredients," including potentiators and enhancers, like maltol and piperonal, and added vanillin, blended together to enhance the vanilla, allowing the use of less vanilla to achieve the intended taste.[15]

---

[14] Monte Reel, The Volatile Economics of Natural Vanilla in Madagascar, Bloomberg.com, Dec. 16, 2019.
[15] Hallagan and Drake, FEMA GRAS and U.S. Regulatory Authority: U.S. Flavor and Food Labeling Implications, Perfumer & Flavorist, Oct. 25, 2018; Charles Zapsalis et al., *Food chemistry and nutritional biochemistry*. Wiley, 1985, p. 611 (describing the flavor industry's goal to develop vanilla compound flavors "That *Seem*[s] to be Authentic or at Least Derived from a Natural Source") (emphasis added).

39.   A compounded vanilla flavor "that matches the taste of pure vanilla natural extracts" can supposedly "provide the same vanilla taste expectation while requiring a smaller quantity of vanilla beans. The result is a greater consistency in pricing, availability and quality."[16]

40.   That high level executives in the flavor industry are willing to openly boast of their stratagems to give consumers less vanilla for the same price is not unexpected.

41.   This is due in part to the once powerful and respected trade group for the flavor industry, The Flavor and Extract Manufacturers Association ("FEMA"), abandoning its "self-policing" of misleading vanilla labeling claims and disbanding its Vanilla Committee.

42.   Though FEMA previously opposed efforts of industry to deceive consumers, it cast the general public to the curb in pursuit of membership dues from its largest members, particularly Unilever, rumored to have been behind FEMA's abdication of self-regulation.

II.  Flavor Labeling Applied to Products Represented as "Vanilla"

A.   Vanilla Combined With Other Natural Flavors

43.   When companies use vanilla and non-vanilla flavors in a product, they are typically combined into an ingredient known as Vanilla With Other Natural Flavors ("Vanilla WONF").

44.   Reasons for doing this may include: (1) having to manage fewer suppliers, (2) ensuring the vanilla and non-vanilla flavors complement each other with the non-vanilla flavors are intended to resemble, simulate and enhance the vanilla flavor, (3) the ability to use less real vanilla, (4) consistency within product batches the flavor is added to, (5) volatile nature of flavoring constituents, (6) the ability to make misleading representations with respect to a product's flavor and ingredients and (7) ease of use.

---

[16] Donna Berry, Understanding the limitations of natural flavors, BakingBusiness.com, Jan. 16, 2018.

45.     Flavorings are not subject to the provisions which allow for the components of an ingredient to be incorporated into the statement of ingredients in order of predominance by weight and where flavor components are combined, the combination is required to be designated as "natural flavor."[17]

46.     However, Vanilla with Other Natural Flavors is often incorrectly and deceptively labeled on ingredient lists: "Natural Vanilla Flavor with Other Natural Flavor," "Natural Vanilla Flavor, Natural Flavor," "Vanilla Extract, Natural Flavor" and "Natural Flavor, [INTERVENING INGREDIENTS] Vanilla Extract."

B.   Unqualified Vanilla is Misleading When Product is Flavored with "Natural Flavor"

47.     Where a product is labeled with the unqualified term "vanilla" yet its ingredient list does not identify vanilla extract or vanilla flavoring as the only flavor ingredient in the product, the front labeling is misleading.

48.     The specific designation of these vanilla ingredients would be required as opposed to the term "natural flavor."

49.     This is because vanilla is the only flavor with its own standards of identity, which control its labeling as opposed to the general flavor regulations.  See 21 C.F.R. § 169.175(b)(1) ("The specified name of the food is "Vanilla extract" or "Extract of vanilla"."); 21 C.F.R. § 169.177(b) ("The specified name of the food is 'Vanilla flavoring.'")

50.     "Natural flavor" refers to "the essential oil, oleoresin, essence or extractive…which contains the flavoring constituents" from a natural source such as plant material and can refer to

---

[17] See 21 C.F.R. § 101.4(b)(1) ("Spices, flavorings, colorings and chemical preservatives shall be declared according to the provisions of 101.22.") with 21 C.F.R. § 101.22(h)(1) ("The label of a food to which flavor is added shall declare the flavor in the statement of ingredients in the following way: (1) Spice, natural flavor, and artificial flavor may be declared as "spice", "natural flavor", or "artificial flavor", or any combination thereof, as the case may be."). This provision is not applicable to the vanilla ingredients which are not controlled by the general flavoring regulations but by their own standards.

combinations of natural flavors. *See* 21 C.F.R. § 101.22(a)(3).

51.    "Artificial flavor" in contrast is any substance whose function is to impart flavor that is not derived from a natural source.  *See* 21 C.F.R. § 101.22(a)(1).

52.    21 C.F.R. § 101.22(i) sets out factors which affect how flavors are designated and include (1) the presence of "natural flavor," and/or "artificial flavor," (2) whether the natural and artificial flavor simulates, resembles or reinforces the characterizing flavor, (3) whether the natural flavor is obtained from the food ingredient represented as the characterizing flavor – i.e., does the peach flavor come from real peaches or is it synthesized from apricots? and (4) the relative amounts of the different flavor types.  *See* 21 C.F.R. § 101.22(i)(1)(i)-(iii), 21 C.F.R. § 101.22(i)(2).

53.    These requirements exist because natural flavors are more expensive than artificial flavors, and the source and amount of flavoring in a food affects consumers' willingness to purchase and consume the food.

54.    A product labeled "Vanilla _____" gives the impression that all the flavor (taste sensation and ingredient imparting same) in the product is contributed by vanilla beans. *See* 21 C.F.R. § 101.22(i)(1) (describing a food which contains no simulating artificial flavor and not subject to 21 C.F.R. § 101.22(i)(1)(i)-(iii)).

55.     Assuming a product contains an "amount of characterizing ingredient [vanilla] insufficient to independently characterize the food, or the food contains no such ingredient," the product would be required to be labeled as "Vanilla flavored _____" or "natural vanilla flavored _____ ." *See* 21 C.F.R. § 101.22(i)(1)(i).

56.    Where a food is labeled "Vanilla" with the absence of the term "flavored," consumers get the impression the food contains a sufficient amount of vanilla to characterize the food.

57.    Where a food contains Vanilla WONF, it contains "characterizing flavor from the

product whose flavor is simulated [vanilla] and other natural flavor which simulates, resembles or reinforces the characterizing flavor [vanilla]." *See* 21 C.F.R. § 101.22(i)(1)(iii).

58.    Such a food is required to be labeled "in accordance with the introductory text and paragraph (i)(1)(i) of this section and the name of the food shall be immediately followed by the words 'with other natural flavor.'" *See* 21 C.F.R. § 101.22(i)(1)(iii).

59.    If the Vanilla WONF contains a sufficient amount of vanilla to independently characterize the food, it would be labeled "Vanilla With Other Natural Flavor." *See* 21 C.F.R. § 101.22(i)(1)(iii); *see also* 21 C.F.R. § 101.22(i)(1) ("introductory text" describing scenario where food contains "no artificial flavor which simulates, resembles or reinforces the characterizing flavor," and none of the sub-paragraphs of 21 C.F.R. § 101.22(i)(1) apply).

60.    If the Vanilla WONF contains an insufficient amount of vanilla to independently characterize the food, it would be labeled "Vanilla Flavored With Other Natural Flavor" or "Natural Vanilla Flavored With Other Natural Flavor." *See* 21 C.F.R. § 101.22(i)(1)(iii) referring to "paragraph (i)(1)(i) of this section," 21 C.F.R. § 101.22(i)(1)(i).

III.    Product is Misleading because it Contains Non-Vanilla Flavors

61.    The Product is a lowfat milk which contains characterizing flavoring ingredients and is required to be "accompanied on the label by a declaration indicating the presence of any characterizing flavoring, as specified in §101.22." *See* 21 C.F.R. §131.110(e) ("Nomenclature").

62.    The Product's representations are misleading because (1) the front label represents the Product's characterizing flavor is vanilla without qualification, (2) the statement, "Real Milk," contributes to the impression the Product contains "Real Vanilla," understood as only vanilla, (3) consumers expect the Product contains a sufficient amount of vanilla to independently flavor the Products.

63.    These representations are false, deceptive and misleading because the ingredient list declares "Organic Natural Flavor" and not an exclusively vanilla ingredient as the only flavor ingredient.

**INGREDIENTS:** GRADE A LOWFAT ORGANIC MILK, ORGANIC CANE SUGAR, ORGANIC NATURAL FLAVOR, GELLAN GUM, VITAMIN A PALMITATE, VITAMIN D3.

64.    "Organic natural flavor" does not refer to an exclusively vanilla ingredient, but an ingredient which contains some vanilla along with non-vanilla flavors and enhancers.

65.    The front label is misleading because it does not disclose the non-vanilla flavors and that the amount of vanilla is less than expected, given the front label.

66.    Even if the front label stated "Vanilla Flavored Lowfat Milk With Other Natural Flavor" or contained a statement beneath "Lowfat Milk" such as "Vanilla Flavor With Other Natural Flavor," it would still be misleading for several reasons.

67.    First, the vanilla standards do not permit adding non-vanilla, "other natural flavors" to an exclusively vanilla flavor without a conspicuous disclosure that such a product contains a combination of vanilla and non-vanilla flavors.

68.    An adequate accompanying statement would disclose the flavoring strength contributed by vanilla and non-vanilla flavors.  *See* Exhibit "A," FDA Letter, Quinn to Molina, 1980 ("in order to distinguish this product from other similar products the general principles of 21

CFR 102.5 should apply. Thus, the name should be accompanied by 'contains 50% vanilla extract and 50% non-vanilla flavors.'").

69. Second, the Product contains or may contain added vanillin as part of the "other natural flavor" in the Vanilla WONF ingredient.

70. In the context of vanilla, vanillin has always been an "artificial flavor" regardless of whether it meets the definition of "natural flavor." *See* 21 C.F.R. § 101.22(a)(3); *supra*.

71. The controlling vanilla regulations require that wherever real vanilla is used together with any kind of vanillin, it is required to be designated on the ingredient list and "followed immediately by the statement 'contains vanillin, an artificial flavor (or flavoring).'" *See* Vanilla-vanillin extract at  21 C.F.R. §§ 169.180(b).[18]

72. These requirements were established to prevent consumers from being misled by products which "spike" a miniscule amount of real vanilla with vanillin.

73. The front label of a lowfat milk product with some vanilla and added vanillin would be required to disclose this material fact by the designation "Artificially Flavored Vanilla Lowfat Milk." *See* 21 C.F.R. § 101.22(i)(2) ("If the food contains any artificial flavor which simulates, resembles or reinforces the characterizing flavor, the name of the food on the principal display panel…shall be accompanied by the word(s) 'artificial' or 'artificially flavored'").

IV.    Vanilla Lowfat Milk Product is Misleading Because They are Labeled and Named Similar to Other Iterations of the Product Which Only Contained Vanilla

74. Several years ago defendant's Vanilla Lowfat Milk only contained flavoring from vanilla, shown below as "Organic Vanilla Extract" on the ingredient list.

---

[18] *See also* 21 C.F.R. § 169.181(b), § 169.182(b) (similar declarations required for Vanilla-vanillin flavoring and Vanilla-vanillin powder).



**INGREDIENTS:**
Organic Grade A Lowfat
Milk, Organic Cane Sugar,
Organic Vanilla Extract,
Gellan Gum, Vitamin A
Palmitate, Vitamin D3.

75.    Product names are established through application of the relevant regulations.[19]

76.    Products are required to be identified and labeled in a way consistent with other products of similar composition.

77.    This framework assures consumers will not be misled by the quality and components of similarly labeled products where one product contains a greater amount, type and/or proportion of a characterizing and valuable ingredient.

78.    By changing its ingredients but not making a corresponding adjustment to its front label, defendant hoped no one would notice this change to the Product.

79.    Not only did defendant not lower the Product's price given the use of less expensive ingredients, the price was increased.

V.    Conclusion

80.    The proportion of the characterizing component, vanilla, has a material bearing on

---

[19] 21 C.F.R. §131.110(e)

price or consumer acceptance of the Product because it is more expensive and desired.

81.     The representations are misleading because the Product does not contain the amount, type and/or percentage of vanilla as a component of its flavoring, which is required by law and consistent with consumer expectations.

82.     Had plaintiff and class members known the truth, they would not have bought the Product or would have paid less for it.

83.     The Product contains other representations which are misleading and deceptive.

84.     As a result of the false and misleading labeling, the Product is sold at a premium price of approximately $2.29 per 8 FL OZ, excluding tax, compared to other similar products represented in a non-misleading way.

<u>Jurisdiction and Venue</u>

85.     Jurisdiction is proper pursuant to 28 U.S.C. § 1332(d)(2) (Class Action Fairness Act of 2005 or "CAFA").

86.     Under CAFA, district courts have "original federal jurisdiction over class actions involving (1) an aggregate amount in controversy of at least $5,000,000; and (2) minimal diversity[.]" *Gold v. New York Life Ins. Co.*, 730 F.3d 137, 141 (2d Cir. 2013).

87.     Upon information and belief, the aggregate amount in controversy is more than $5,000,000.00, exclusive of interests and costs.

88.     This is a reasonable assumption because defendant's Products are sold in thousands of stores across all 50 states and have been sold bearing the allegedly misleading claims for several years.

89.     Plaintiff Wendy Lamouth is a citizen of New York.

90.     Defendant Horizon Organic Dairy, LLC is a Delaware limited liability company with

a principal place of business in Broomfield, Jefferson County, Colorado and is a citizen of Colorado and upon information and belief, at least one member of defendant is not a citizen of New York.

91.    This court has personal jurisdiction over defendants because it conducts and transacts business, contracts to provide and/or supply and provides and/or supplies services and/or goods within New York.

92.    Venue is proper because plaintiff and many class members reside in this District and defendant does business in this District and State.

93.    A substantial part of events and omissions giving rise to the claims occurred in this District.

Parties

94.    Plaintiff Wendy Lamouth is a citizen of Bronx, Bronx County, New York.

95.    Defendant Horizon Organic Dairy, LLC is a Delaware limited liability company with a principal place of business in Broomfield, Colorado, Jefferson County.

Class Allegations

96.    The classes will consist of all consumers in New York, the other 49 states and a nationwide class where applicable.

97.    Common questions of law or fact predominate and include whether defendant's representations and practices were likely to harm plaintiff and if plaintiff and class members are entitled to damages.

98.    Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair and deceptive actions.

99.    Plaintiff is an adequate representative because her interests do not conflict with other

members.

100.  No individual inquiry is necessary since the focus is only on defendant's practices and the class is definable and ascertainable.

101.  Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

102.  Plaintiff's counsel is competent and experienced in complex class action litigation and intends to adequately and fairly protect class members' interests.

103.  Plaintiff seeks class-wide injunctive relief because the practices continue.

New York GBL §§ 349 & 350
(Consumer Protection from Deceptive Acts)

104.  Plaintiff incorporates by reference all preceding paragraphs.

105.  Plaintiff and class members desired to purchase products which were as described by defendant and expected by reasonable consumers, given the product type.

106.  Defendant's acts and omissions are not unique to the parties and have a broader impact on the public.

107.  Defendant's conduct was misleading, deceptive, unlawful, fraudulent, and unfair because it gives the impression to consumers the Products contain sufficient amounts of the highlighted ingredient, vanilla, to characterize the taste or flavor of the Products and only contain said ingredient to flavor the Product.

108.  Plaintiff and class members relied on the representations and paid more for the Products as a result of what defendant stated about the Products.

109.  Plaintiff and class members would not have purchased the Products or paid as much if the true facts had been known, suffering damages.

Negligent Misrepresentation

110.  Plaintiff incorporates by reference all preceding paragraphs.

111.  Defendant misrepresented the substantive, quality, compositional, organoleptic and/or nutritional attributes of the Products through representing they contained sufficient amounts of the highlighted ingredient, vanilla, to characterize the taste or flavor of the Products and only were flavored by vanilla.

112.  Defendant had a duty to disclose and/or provide non-deceptive labeling of the Product and its components and ingredients, and knew or should have known same were false or misleading.

113.  This duty is based on defendant's position as an entity which has held itself out as having special knowledge and experience in the production, service and/or sale of the product or service type.

114.  The representations took advantage of consumers' (1) cognitive shortcuts made at the point-of-sale and (2) trust placed in defendant, a well-known and respected brand in this sector.

115.  Plaintiff and class members reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, the purchase of the Products.

116.  Plaintiff and class members would not have purchased the Products or paid as much if the true facts had been known, suffering damages.

<u>Breaches of Express Warranty, Implied Warranty of Merchantability and
Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq*.</u>

117.  Plaintiff incorporates by reference all preceding paragraphs.

118.  Defendant manufactures and sells products which purport to contain sufficient amounts of the highlighted ingredient, vanilla, to characterize the taste or flavor of the Products and only contained the highlighted ingredient to flavor the Product, which is desired by consumers.

119.  The Products warranted to Plaintiff and class members that they possessed substantive, functional, nutritional, qualitative, compositional, organoleptic, sensory, physical and other attributes which they did not due.

120.  Defendant had a duty to disclose and/or provide a non-deceptive description and identification of the Products.

121.  This duty is based, in part, on defendant's position as one of the most recognized companies in the nation in this sector.

122.  Plaintiff provided or will provide notice to defendant, its agents, representatives, retailers and their employees.

123.  Defendant has received or reasonably should have received notice or been aware its Product is misleading because defendant swapped out the higher priced ingredients yet intentionally did not make a corresponding front label change.

124.  The Products did not conform to their affirmations of fact and promises due to defendant's actions and were not merchantable.

125.  Plaintiff and class members relied on defendant's claims, paying more than they would have.

<u>Fraud</u>

126.  Plaintiff incorporates by references all preceding paragraphs.

127.  Defendant's purpose was to sell a product which purported to contain sufficient amounts of the highlighted ingredient, vanilla, to characterize the taste or flavor of the Products and only contained flavor from vanilla.

128.  Defendant's fraudulent intent is evinced by its failure to accurately identify the Product on the front label.

129.   Plaintiff and class members observed and relied on defendant's claims, causing them to pay more than they would have, entitling them to damages.

<u>Unjust Enrichment</u>

130.   Plaintiff incorporates by reference all preceding paragraphs.

131.   Defendant obtained benefits and monies because the Products were not as represented and expected, to the detriment and impoverishment of Plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

<u>Jury Demand and Prayer for Relief</u>

Plaintiff demands a jury trial on all issues.

  **WHEREFORE**, Plaintiff prays for judgment:

1.  Declaring this a proper class action, certifying Plaintiff as representative and undersigned as counsel for the class;

2.  Entering preliminary and permanent injunctive relief by directing defendant to correct the challenged practices to comply with the law;

3.  Injunctive relief to remove, correct and/or refrain from the challenged practices and representations, restitution and disgorgement for members of the State Subclasses pursuant to the applicable laws of their States;

4.  Awarding monetary damages and interest, including treble and punitive damages, pursuant to the common law and other statutory claims;

5.  Awarding costs and expenses, including reasonable fees for plaintiff's attorneys and experts; and

6.  Other and further relief as the Court deems just and proper.

Dated:   December 31, 2019

                                        Respectfully submitted,

Sheehan & Associates, P.C.
/s/Spencer Sheehan

Spencer Sheehan
505 Northern Blvd., Suite 311
Great Neck, NY 11021
Telephone: (516) 303-0552
Facsimile: (516) 234-7800
*spencer@spencersheehan.com*
E.D.N.Y. # SS-8533
S.D.N.Y. # SS-2056

1:19-cv-11928
United States District Court
Southern District of New York

Wendy Lamouth, individually and on behalf of all others similarly situated,

Plaintiff,

- against -

Horizon Organic Dairy, LLC,

Defendant

## Class Action Complaint

```
Sheehan & Associates, P.C.
 505 Northern Blvd., #311
   Great Neck, NY 11021
   Tel: (516) 303-0552
   Fax: (516) 234-7800
```

Pursuant to 22 NYCRR 130-1.1, the undersigned, an attorney admitted to practice in the courts of New York State, certifies that, upon information, and belief, formed after an inquiry reasonable under the circumstances, the contentions contained in the annexed documents are not frivolous.

Dated:  December 31, 2019

/s/ Spencer Sheehan
Spencer Sheehan